UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LISA BROCKWELL, | ) | Case No.: 1: 04 CV 1155 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| BEACHWOOD CITY SCHOOL DISTRICT, | ) ) ) | |
| | ) | |
| Defendant | ) | <u>ORDER</u> |

Now pending before the court is Plaintiff Lisa Brockwell's ("Plaintiff" or "Brockwell") Motion to Enforce the Settlement Agreement (ECF No. 25). The court held an evidentiary hearing on the Motion on February 27, 2006. (ECF No. 34.) For the reasons stated below, the court denies Plaintiff's Motion.

### I. FACTS

#### A. The Parties' Prior Lawsuit and the Instant Lawsuit

It is undisputed that Plaintiff and Defendant Beachwood City School District ("Defendant" or "Beachwood") were involved in a prior lawsuit, *Brockwell v. Beachwood City School District,* Case No. 1:99 CV 1960, which was filed in the Northern District of Ohio on August 13, 1999, and assigned to Judge Gwin. (Pl.'s Mot to Enforce at 1; Pl.'s Ex. A; Case No. 1:99 CV 1960 ECF docket.) The prior lawsuit arose out of Defendant's alleged denial of Plaintiff's FMLA rights. (Pl.'s Mot. to Enforce Settlement at 1.) Plaintiff and Defendant reached a settlement in that case on

April 12, 2000. (Case No. 1:99 CV 1960, ECF No. 19)

Subsequent to the prior lawsuit, Plaintiff believed Defendant retaliated against her by failing to award her various positions for which Plaintiff had applied that were in addition to or in replacement of her normal duties as a bus driver. (Pl.'s Mot. to Enforce at 1; Compl., ECF No. 1.) As a result, Plaintiff filed the instant lawsuit on June 17, 2004, alleging retaliation in violation of the FMLA. (*Id.*)

### B. The Parties' Mediation and the Court's Subsequent Order of Case Dismissal

The parties in the instant case attended a mediation on February 21, 2005. (ECF No. 22.) The ADR Administrator reported to the court on March 1, 2005, that "the parties reached a settlement agreement, subject to ratification by the Beachwood Board of Education." (*Id.*) The ADR Administrator's report indicated that the parties would file a Dismissal Entry with the court no later than March 24, 2005. (*Id.*) The parties agreed that Defendant would draft a settlement agreement memorializing the agreement that had been reached at the mediation, and Defendant would then submit the settlement agreement to Plaintiff. (Pl.'s Mot. to Enforce Settlement at 2.) The parties failed to file a Dismissal Entry by March 24, 2005.

Based upon the representation to the court that the parties had reached settlement, the court filed an Order of Case Dismissal on March 31, 2005, which reads:

> This court has been advised by the ADR Administrator that this action has been settled and that the parties will be submitting a dismissal entry to the court. Therefore it is not necessary that the action remain upon the calendar of the court.
>
> IT IS ORDERED that this action is hereby closed. The court retains jurisdiction to vacate this Order to reopen the action upon cause shown that settlement has not been completed and further litigation is necessary.

(Order of Case Dismissal, ECF No. 24.) The parties failed to file a dismissal entry.

**C. Post-Mediation Communications Between the Parties Regarding Settlement**

Defendant's former counsel, Mark Bennett ("Bennett"), submitted a written Release and Settlement Agreement to Plaintiff's counsel, Richard Selby ("Selby"), on March 9, 2005. Plaintiff objected to the following paragraphs in Defendant's written draft Release and Settlement Agreement:

> 1(a) In consideration of the full payment to Brockwell by Beachwood through Indiana and Nationwide equally in the gross amount of $15,000.00, and Beachwood's committed [sic] to use its best efforts to provide Brockwell a work schedule of eight (8) hours a day for twelve (12) months a year within the transportation department until she has obtained thirty (30) years in the PERS system, with the exception and understanding of Brockwell that Beachwood cannot "guarantee" an eight (8) hour day for twelve (12) months unless there is work to be done in the transportation department which she is qualified to do. Accordingly, Brockwell acknowledges and agrees that Beachwood has not guaranteed the above work schedule, but only its best efforts to provide said work schedule. Brockwell will be provided said work schedule based on the availability of the work and her seniority, but if those with seniority to her are not provided with their promised work schedules, and/or Beachwood must alter the above work schedule for business necessity.
>
> 1(b) Brockwell acknowledges and agrees that, although she may submit her application for other employment positions at Beachwood, she will only be considered for, and/or employed for positions for which she is qualified, as determined by Beachwood, at its sole discretion, and that this Release and Settlement does not constitute, and is not intended to constitute by either party, a contract for employment. ...
>
> (2) In consideration of Brockwell's execution of this Release and Settlement Agreement and Brockwell's release of all claims against Beachwood, Beachwood through its insurers ... agrees to make the payment described in Paragraph 1. Brockwell agrees that all monies paid to her under this Agreement are contingent upon her conducting himself [sic] in a professional manner including, but not limited to, refraining from making disparaging comments to anyone about Beachwood, its board members, its officers, its managers, its supervisors, its agents, its representatives, or its employees.
>
> (4) Brockwell agrees to maintain the terms of the Release and Settlement Agreement in strict confidence, and specifically agrees not to communicate, publish, characterize, publicize, or disseminate in any manner any of the terms of the settlement, the amount of the settlement, or any of the settlement negotiations, except

>that Brockwell may specifically communicate the amount of the settlement to her tax preparer and/or counsel, but only under the same terms of confidentiality as set forth herein.

(Pl.'s Mot to Enforce, Ex. A.)  The court also notes that in paragraph 1(c), Defendant referenced a binding Mediation and Arbitration Agreement, described as Exhibit A, but Defendant failed to attach it to the e-mail that Defendant sent to Selby.  Paragraph 1(c) of the Release and Settlement Agreement reads as follows:

>(1)(c) Brockwell acknowledges and agrees to submit any and all future claims, disputes, allegations regarding her employment with Beachwood to a two-step process of mediation and, if not resolved through mediation, to binding arbitration as detailed in the attached Binding Mediation and Arbitration Agreement, attached hereto as Ex. A.

(*Id.*)

In response to Defendant's Release and Settlement Agreement, Selby asked Defendant on March 6, 2005, that Defendant re-write the following paragraphs to read:

>1(a) In consideration of the full payment to Brockwell by Beachwood through Indiana and Nationwide equally in the gross amount of $15,000.00, and Beachwood **shall commit** to provide Brockwell a work schedule of eight (8) hours a day for twelve (12) months a year, **with all benefits given to twelve (12) month employees including but not limited to vacations, paid holidays, sick leave, and health insurance,** within the transportation department until she has obtained thirty (30) years in the PERS system.  Beachwood **may reduce Brockwell's work schedule to less than** eight (8) hour day for twelve (12) months **per year only in the event that all employees in the transportation department with less seniority than Brockwell have already been reduced to lesser schedules and there are no positions available to Brockwell in the transportation department or which have previously been given to employees from the transportation department for which she is qualified.**

>1(b) Brockwell acknowledges and agrees that, although she may submit her application for other employment positions at Beachwood **in the transportation department**, she will only be considered for, and/or employed for positions for which she is qualified, as determined by Beachwood, **and that Beachwood has no obligation to employ Brockwell in any position outside of the transportation department that has not previously been given to an employee from the transportation department.**

>   (2) In consideration of Brockwell's execution of this Release and Settlement Agreement and Brockwell's release of all claims against Beachwood, Beachwood through its insurers ... agrees to make the payment described in Paragraph 1. Brockwell agrees that all monies paid to her under this Agreement are contingent upon her conducting himself [sic] in a professional manner including, but not limited to, refraining from making disparaging comments to anyone about Beachwood, its board members, its officers, its managers, its supervisors, its agents, its representatives, or its employees. **Beachwood will take appropriate steps to assure that its board members, its officers, its supervisors, its agents, its representatives, and/or its employees will refrain from making disparaging comments to anyone about Brockwell.**
>
>   (4) Brockwell **and Beachwood, to the extent permitted by law,** agrees to maintain the terms of the Release and Settlement Agreement in strict confidence, and specifically agrees not to communicate, publish, characterize, publicize, or disseminiate in any manner any of the terms of the settlement, the amount of the settlement, or any of the settlement negotiations, except that Brockwell may specifically communicate the amount of the settlement to her tax preparer and/or counsel, but only under the same terms of confidentiality as set forth herein.

(Pl.'s Mot. to Enforce, Ex. B, proposed changes displayed in bold text.)

Plaintiff also requested that Defendant replace paragraph 7, which neither Plaintiff nor Defendant provided to the court, with the following paragraph:

>   **(7) In the event that either party believes that the other party has violated the non-disparagement provisions (paragraph 2) and confidentiality provisions (paragraph 4) of this Release and Settlement Agreement, such claims may be submitted to binding arbitration as detailed in the Attached Arbitration Agreement for a determination of an appropriate remedy.**

(*Id.*) Finally, Plaintiff did not object to submitting disputes to binding mediation and arbitration, but simply asked Defendant to send Plaintiff the Binding Mediation and Arbitration Agreement (referenced as Ex. A) for Plaintiff's review.

The parties exchanged telephone calls and e-mails over the next several months regarding their dispute about the material terms of the Release and Settlement Agreement. (*See* Pl.'s Mot. to Enforce, Exs. C, D, E, F; Def.'s Opp'n to Mot. to Enforce, Exs. D, E, F, G, H). For example,

Defendant stated in an e-mail to Plaintiff on May 27, 2005, that the issue of dispute between the parties is that: "Plaintiff wants to be "guaranteed" 8 hours a day for twelve months, and that this "is not and never will be, acceptable to the school." (Def.'s Opp'n to Mot. to Enforce, Ex. H.) In the e-mail, Defendant maintains that both Plaintiff and Selby acknowledged and agreed to this term at the mediation. (*Id.*)

### D. Motion to Enforce

The parties did not resolve their dispute regarding what the material terms were that they had agreed upon at the mediation, and Plaintiff subsequently filed a Motion to Enforce. In her Motion, Plaintiff maintains that the parties reached a "meeting of the minds" at the mediation with respect to the material terms of the settlement agreement. (Pl.'s Mot. to Enforce at 2.) Plaintiff states that the material terms were:

(1) Defendant was to pay Plaintiff the sum of $15,000; and

(2) Defendant would provide Plaintiff with twelve months of work on an eight hour a day basis subject to the limitation that such work existed and nobody with less seniority than Plaintiff was working a greater number of hours than Plaintiff.

(Pl.'s Mot. to Enforce Settlement at 2.)

Conversely, Defendant maintains that the parties failed to reach a "meeting of the minds" on the material terms of the settlement agreement. (Def.'s Opp'n to Mot. to Enforce at 7-9.) Defendant states that its understanding of the material terms reached at the mediation hearing were embodied in the Settlement and Release Agreement and are as follows:

(1) Payment of $15,000 by insurance companies for the district;

(2) Beachwood's commitment to use its best efforts to provide Plaintiff an 8-hour per day, 12 month work schedule without any guarantee that 8 hours or 12 months would in fact be provided;

>   (3) Mediation of any future disputes;
>
>   (4) A dismissal of Plaintiff's FMLA lawsuit;
>
>   (5) A confidentiality and non-disparagement clause along with the typical release language required for any civil rights matter.

(Def.'s Opp'n to Mot. to Enforce at 4.)

### E. Evidentiary Hearing on February 27, 2006

The court held an evidentiary hearing on Plaintiff's Motion to Enforce on February 27, 2006. At the hearing, Defendant told the court that its understanding of the material terms upon which it reached agreement with Plaintiff at the mediation was embodied in the March 5, 2005, Settlement and Release Agreement. However, Plaintiff asserts that her understanding of the material terms upon which the parties reached agreement were embodied in the letter that it submitted to Defendant on March 6, 2005, disputing some of these terms.

At the hearing, Bennett stated that Defendant viewed Plaintiff's March 6, 2005, letter as a "counter-proposal." Defendant presented the "counter-proposal" to the Beachwood School Board on August 22, 2005. The School Board rejected the "counter-proposal" because it required Defendant to "commit" to giving Plaintiff twelve months of work for eight hours per day, rather than Defendant promising to use its "best efforts" to provide Plaintiff with such work. Additionally, Defendants believed that it should be able to determine whether Plaintiff is as "qualified" for other, non-bus-driving positions as other individuals who applied for the positions, and that these positions should not be based on seniority alone. For example, Plaintiff had previously applied for the mechanic's helper job, and Defendant had given it to an individual with less seniority than Plaintiff. Defendant stated that its decision to award the position to an individual with less seniority was based

upon the fact that Plaintiff had not completed the required training for the mechanic's helper position.

Conversely, Plaintiff characterizes the "counter-proposal" language as meaning that Plaintiff would have at least as many hours as everyone in the transportation department with less seniority than Plaintiff. Plaintiff emphasized that this was important to Plaintiff because of the context of the instant lawsuit, *i.e.*, that Plaintiff believed that Defendant had retaliated against her by not giving her jobs to which she applied and that she was allegedly qualified for, and by taking work away from her. Additionally, Plaintiff asserts that her understanding of the "qualification" provision was that, once a minimum level of qualification was met, Plaintiff would receive the position if she had more seniority. Plaintiff requested this language because she wanted to avoid Defendant from contending in the future that Plaintiff was qualified for a position, but another applicant was more qualified.

Defendant's current counsel, John S. Kluznik, stated at the hearing that:

> With regard to the job assignments outside of driving buses, we need to work on that language with the people that are knowledgeable about what those classifications are, and I am not certain of what they are. We will get to that, and we will work on that language with Mr. Selby, but what I am understanding it, we will be working along the lines of defining those job assignments outside of driving a bus, and that probably picks up the qualifications issue. Rather than misstate anything, I would think the best thing for me would be to get the language after talking to the people in the transportation department, I would guess, get with Mr. Selby, and if we have a problem defining that, then we would get back to the court.

The court responded, while emphasizing it was not making any legal conclusions, that:

> Defendant has suggested the right approach here. I think given the fact that there was an attempt to resolve this before and the parties almost got there, quite frankly, somewhere between trying to get it committed in writing and now, which has been a long period of time, it just didn't get there. I don't think you need a lot of extra language. I don't think it should become a prolonged agreement.

The court then stated that if the parties did not reach agreement within fourteen days, Plaintiff's counsel should notify the court by filing on the docket that the parties have negotiated and have been unable to reach agreement. That day, the court issued its Minutes of Motion Hearing, wherein the court indicated that the parties should continue to engage in settlement discussion, and that Plaintiff's counsel should contact the court within fourteen days. (ECF No. 34.) Plaintiff's counsel never contacted the court as instructed.

## II. LAW AND ANALYSIS

The Sixth Circuit has repeatedly held that a federal court may enforce agreements entered into in settlement of litigation pending before them, even if that agreement has not been reduced to writing,"so long as agreement has been reached on <u>all material terms</u>." *Michigan Reg'l Council of Carpenters v. New Century Bancorp,* 99 Fed App'x 15, 20 (6th Cir. 2004) (emphasis added) (citing *Re/Max Int'l v. Smythe, Cramer Co.,* 271 F.3d 633, 646 (6th Cir. 2001); *Brock v. Scheuner Corp.,* 841 F.2d 151, 154 (6th Cir. 1988)). "Ordinarily, an evidentiary hearing is required where facts material to an agreement are disputed," but a hearing is not required if the agreement is "clear and unambiguous and no issue of fact is present." *Michigan Reg'l Council of Carpenters,* 99 Fed App'x at 20 (citations omitted). Thus, "summary enforcement of a settlement agreement has been deemed appropriate where no substantial dispute exists regarding the entry into and terms of an agreement." *Id.* However, "summary proceedings may result in inequities when such a dispute exists." *Kukla v. Nat'l Distillers Prods. Co.,* 483 F.2d 619, 621 (1973). Since it appeared that substantial dispute existed in the instant case regarding the entry into and terms of the agreement reached during mediation, the court conducted an evidentiary hearing.

Courts have enforced settlement agreement where the parties reached a "meeting of the

minds" on all material terms. For example, in *Re/Max Int'l,* 271 F.3d at 646, the Sixth Circuit stated that the record showed that "all essential terms of the settlement agreement had been agreed upon in open court and all that remained was to sort out the non-material details and put the agreement in writing." Realty One, the defendant who claimed that the district court erred in enforcing the settlement agreement, "acknowledge[d] that there was a clear and unambiguous agreement, constituting a meeting of the minds on key terms." *Id.* Moreover, the Sixth Circuit noted that the defendant's objective acts (*e.g.,* communicating its belief that an agreement had been reached in a newsletter to its employees, tendering a payment of over $3 million to the plaintiff, and withdrawing its adverse split letters) reflected the defendant's belief that it had reached a settlement agreement, though the defendant later disputed the court's enforcement of the settlement. The court therefore upheld the district court's enforcement of the settlement agreement.

Conversely, in *Brock,* 841 F.2d at 154, the Sixth Circuit cited *Ozyagcilar v. Davis,* 701 F.2d 306, 308 (4th Cir. 1983), for the proposition that the parties must reach a "meeting of the minds" on all material terms before a court can enforce a settlement agreement. The plaintiff in *Ozyagcilar,* a student at the University of South Carolina, sued the University and two professors regarding patent rights over two new chemical processes. *Id.* at 307. Just before trial, the parties purportedly reached a settlement. *Id.* Subsequently, a dispute arose between the parties during the drafting of a formal settlement agreement about the meaning of a clause. *Id.* at 307-08. Specifically, the parties' proposed agreement contained a clause which stated, "ownership in the University of all United States and foreign patents and patent applications, except for Turkey, ... Ozyagcilar to receive a 'non-exclusive transferable royalty-free irrevocable license' under the patents and patent applications." *Id.* at 307. Plaintiff contended that his understanding of this material terms was that he would have

-10-

the right to sublicense the process to numerous companies. *Id.* Defendants contended that their understanding of the material term was that the plaintiff would obtain only one indivisible license that he could transfer to only one company. *Id.* The district court issued an order interpreting the agreement. The Fourth Circuit's reversal of the district court's order was based on the fact that the parties had not reached a "meeting of the minds" on all material terms. Significantly, the Fourth Circuit explained:

> It is well settled that a district court retains inherent jurisdiction and equitable power to enforce agreements entered into in settlement of litigation before that court. However, it is clear that the district court only retains the power to enforce complete settlement agreements; it does not have the power to impose, in the role of a final arbiter, a settlement agreement where there was never a meeting of the parties' minds. Where there has been no meeting of the minds sufficient to form a complete settlement agreement, any partial performance of the settlement agreement must be rescinded and the case restored to the docket for trial.

*Id.* at 308.

Similarly, the Sixth Circuit in *Therma-Scan, Inc., v. Thermoscan, Inc.,* 217 F.3d 414, 419-20 (6th Cir. 2000) reversed the district court's enforcement of the parties' purported settlement agreement because it found that the parties did not reach a "meeting of the minds" on a material term. Moreover, the district court in *Raytheon Aircraft Credit Corp. v. Henderson,* No. 01-1178-WEB, 2001 U.S. Dist. LEXIS 21433, at *5-7 (D. Kan. Dec. 7, 2001), held that the court could not enforce a settlement agreement where, although the parties might have reached a "meeting of the minds" regarding some of the material settlement terms, the parties dispute that they reached agreement on all of the material terms of the settlement agreement.

Here, unlike the facts in *Re/Max,* the material terms of the settlement agreement were never presented in open court, and neither Plaintiff nor Defendant's objective acts reflected a belief that

they had reached a settlement agreement. Moreover, like *Ozyagcilar, Therma-Scan,* and *Raythen,* the court finds that the parties in the instant case did not reach a "meeting of the minds" with respect to all material terms. Specifically, while the court finds that Plaintiff and Defendant reached a "meeting of the minds" regarding the $15,000 monetary settlement amount, they did not reach a "meeting of the minds" regarding the material term of Plaintiff's employment hours at the Beachwood City School District. From the very first exchanges of proposed settlement documents after the mediation to the parties' testimony on the record at the evidentiary hearing, it is clear that the parties never agreed upon this material term. Essentially, Plaintiff's understanding of the material term was that Defendant would "commit" to providing her an eight hour per day, twelve month employment schedule. Conversely, Defendant's understanding of the settlement agreement that was reached at mediation was that Defendant would act fairly by using its "best efforts" to try to provide Plaintiff with an eight-hour per day, twelve-month employment schedule. These are two different concepts. Moreover, the parties acknowledged at the evidentiary hearing that the "qualifications" clause was unclear, and that they would therefore engage in further settlement discussion to define it.

Since the court finds that the parties did not reach a meeting of the minds on all the material terms of the settlement agreement, the court cannot act as a "final arbiter" to impose a settlement agreement upon the parties. Accordingly, pursuant to the March 31, 2005, Order of Case Dismissal (ECF No. 24), the court now exercises its jurisdiction to vacate that Order and to reopen this action.

### III. CONCLUSION

For the above-stated reasons, the court denies Plaintiff's Motion to Enforce the Settlement Agreement. (ECF No. 25.) The court hereby refers the within case to Magistrate Judge Baughman to hold a settlement conference with the parties by May 1, 2008. Magistrate Judge Baughman will schedule the conference.

IT IS SO ORDERED.

/S/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE

March 31, 2008